## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**BRANDON GRIFFIN,**

    **Plaintiff,**

    **v.**

**PRIMECARE MEDICAL,** *et al.,*

    **Defendants.**

**Civil Action No.: JKB-25-0792**
**(Consolidated Case: JKB-25-0804)**

### MEMORANDUM

Washington County Detention Center, Officer Bottman, and Officer Grove (the "County Defendants") have filed a Motion to Dismiss or, in the alternative, for Summary Judgment, in response to the above-entitled civil rights complaint filed by self-represented Plaintiff Brandon Griffin. (ECF No. 16.) Griffin opposes the Motion and requests appointment of counsel. (ECF Nos. 20, 21.) The County Defendants also responded to this Court's Order to show cause why injunctive relief should not be granted in favor of Griffin (ECF No. 13), and Griffin has filed a Reply (ECF No. 15). There is no need for a hearing. *See* Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, injunctive relief will be denied, Griffin's request for counsel will be denied,[1] and the County Defendants' Motion will be granted. Furthermore, exercising its authority under 28 U.S.C. § 1915A, the Court will dismiss the claims against PrimeCare Medical Center and PrimeCare Medical Staff ("PrimeCare Defendants") even though they have not been served nor has counsel entered an appearance on their behalf.

---

[1] There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a pro se litigant has a "colorable claim" but "lacks the capacity to present it." *Jenkins v. Woodard*, 109 F.4th 242, 248 (4th Cir. 2024) (internal citation omitted). Griffin has capably presented his claims without assistance of counsel, and there is no reason to believe that he lacks the capacity to further present them. Accordingly, his request for counsel will be denied.

## I.   BACKGROUND

### A.   Original Complaint

Griffin initiated this action by filing a complaint, which did not name specific defendants, on March 10, 2025. Because Griffin claimed that he suffered several medical ailments while incarcerated at Washington County Detention Center ("WCDC") (ECF No. 1 at 1), the Court construed WCDC as the proper Defendant. Griffin stated that he had a tooth infection for which he had been receiving ibuprofen and antibiotics. However, both medications had been stopped for no reason, and no extraction for his tooth had been scheduled. (*Id.*) He also claimed that related symptoms were being ignored. (*Id.* at 2.) Additionally, Griffin claimed that he had previously passed out in his cell due to an asthma attack. (*Id.* at 3.) However, despite officers' knowledge of the asthma attack, Griffin was not given emergency medical attention. (*Id.*) Griffin further stated that since he had been incarcerated, he had been on "two different inhalers: albuterol and also Alvesco which is a more serious steroid inhaler for chronic patients" that he was supposed to receive twice a day. (*Id.*) However, he received it "maybe 10 times" since he had been arrested because "they only give it to you when you [are] nearly dying." (*Id.*) According to Griffin, he was not permitted to keep his inhalers with him, and he was kept awake all night with "constant coughing and wheezing." (*Id.* at 4.) When he informed the warden of the problem, he stated that the warden told him that PrimeCare was aware of his problem. (*Id.*)

Griffin further alleged that, instead of receiving medical attention, an officer "eye gouged" him and threw him against a wall. (*Id.* at 5.) Griffin told the officer that he was not resisting; rather, he was trying to get medical treatment for his asthma and his mouth. (*Id.*) He claimed that the officer then apologized for poking him in the eyes. (*Id.*) Griffin also noted that he had been taking 16mg of suboxone per day since October 10, 2025, and claimed it was bothering his teeth and gums. (*Id.*)

**B. Show Cause Order**

The circumstances Griffin alleged in his complaint regarding lack of access to medications for his asthma prompted this Court to issue an April 9, 2025, Order to show cause why immediate injunctive relief should not be granted in Griffin's favor. (ECF No. 8.) The County Defendants responded and provided the following information. (ECF No. 13.)

Griffin was booked into WCDC on January 27, 2025, and he was given a physical examination two days later at which time he reported that he had asthma which he managed with Advair twice a day and Albuterol as needed. (ECF Nos. 13-1 at 2; 13-4.) At that time, no current medical concerns were noted, and Griffin was scheduled for a routine follow-up in one month for his asthma. (ECF No. 13-1 at 2.) Griffin was then prescribed several medications to manage his asthma. (ECF No. 13-4 at 2.) But, according to the medication administration record maintained for Griffin, his compliance with asthma inhalant medications was sporadic. (ECF No. 13-10 at 2–7.) A nurse also attested that there is "no evidence in his chart that [Griffin] . . . submitted any sick call slips requesting his inhaler or complaining of any asthma symptoms." (ECF No. 13-1 at 3.)

As to Griffin's dental maladies, records showed that on February 10, 2025, Griffin first complained of "right bottom and top right tooth pain which he reported had been ongoing for the 'past few weeks.'" (*Id.* at 2.) Griffin also complained it was difficult to chew and said that Ibuprofen relieved the throbbing pain. (*Id.*) When the nurse to whom he reported these symptoms, Lisa Burger, LPN, examined his teeth, there was evidence of decay. (*Id.*) Griffin was offered Ibuprofen until he could be seen by a dentist. (*Id.*; *see also* ECF No. 13-5 at 2.) On February 23 and 24, 2025, Griffin reported increased tooth pain and swelling; amoxicillin was prescribed to treat the possibility of an infection. (ECF Nos. 13-6, 13-7.)

On March 12, 2025, Griffin was seen in the chronic care clinic for his asthma. At that time, his lungs were clear, his vital signs were stable, his breathing was normal, and his asthma was

3

considered stable. (ECF No. 13-8 at 2.) His only complaint was right lower dental pain where he had a large cavity in the right lower molar. (*Id.*) The following day, Griffin saw a dentist who documented that "tooth #32 was severely decayed and not restorable." (ECF No. 13-9 at 2.) Griffin consented to having the tooth extracted. (*Id.*) Records indicated that the problem with Griffin's tooth began long before he began his period of incarceration at WCDC. (ECF No. 13-1 at 3.)

### C. Amended Complaint

Griffin filed an Amended Complaint on April 10, 2025, in which he named as Defendants Officers Bottman and Grove as well as PrimeCare Medical and PrimeCare Medical Staff. (ECF No. 10.) The Court also continued to construe the Amended Complaint as bringing claims against WCDC. He alleged that on April 5, 2025, he was taken to the Gymnasium at WCDC for his suboxone medication which he received from PrimeCare staff. (ECF No. 10 at 4.) He claimed his civil rights were continuously violated because "the jail and [personnel] working for them" were decreasing his medication dosage. (*Id.*) He claimed that the reduction in his dosages was a violation of his constitutional rights because he had been dealing with withdrawals from opioid addiction and a "large amount of mouth/dental pain" that he blames on PrimeCare "for not telling me that suboxen [sic] is to[o] strong/potent for my teeth." (*Id.* at 5.) He claimed that the medication was decaying his teeth rapidly and added that officers were improperly assisting nurses with medication distribution. (*Id.*)

### D. County Defendants' Motion

In their dispositive motion seeking dismissal or summary judgment in their favor, the County Defendants assert that WCDC makes an Inmate Handbook available to all detainees, including Griffin. (ECF No. 16-1 at 8.) The Handbook provides that if a detainee believes they are a victim of abuse by a member of the staff, they should report the incident "confidentially

4

through the mail" to "a person of higher rank or someone who supervises that person." (ECF No. 16-13 at 4.) Also contained in the Handbook is an Inmate Grievance Procedure, which lays out a detailed process for resolving complaints that arise during confinement at WCDC. (*Id.* at 54.) The County Defendants assert that Griffin never filed a grievance during his time at WCDC, either informal or formal, regarding his medical conditions. (ECF No. 16-12 at 2.)

## II.   DISCUSSION

### A. Preliminary Injunction

#### 1. Legal Standard

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) that the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Grp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). Additionally, under 18 U.S.C. § 3626(a)(2):

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct

5

that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

*Id.*

### 2. Analysis

Here, the initial concern prompting consideration of injunctive relief was the possibility that Griffin was suffering asthma attacks without appropriate medical intervention. The response provided by WCDC has established that Griffin has in fact received treatment for his asthma and has also received treatment for his teeth and his opioid addiction. Thus, preliminary injunctive relief is unnecessary to prevent irreparable harm from befalling Griffin. Furthermore, because Griffin is no longer incarcerated at WCDC, any injunctive relief that this Court could have granted is now moot and must be denied on that basis as well.

### B. County Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment

### 1. Legal Standard

The County Defendants' dispositive motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, in deciding a Rule 12(b)(6) motion, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must

be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. City of Salisbury*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam).

The Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). As to the first requirement, when the movant expressly captions its motion as one for summary judgment "in the alternative" and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). As for the second requirement, to show that he has not received a reasonable opportunity for discovery, the nonmovant ordinarily must present an affidavit under Rule 56(d) which shows that, "for specified reasons," he "cannot present facts essential to justify [his] opposition." Fed. R. Civ. P. 56(d). However, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002) (internal citations omitted).

The Court concludes that resolution under Rule 56 is appropriate. Griffin has not requested discovery under Rule 56, nor has he filed an Affidavit in compliance with Rule 56(d). Thus, conversion of Defendants' motion to one for summary judgment is appropriate and this Court will consider the exhibits filed.

When considering a motion under Rule 56(a), summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

7

judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted). Because Griffin is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## B. Analysis

The County Defendants raise the affirmative defense that Griffin failed to exhaust administrative remedies before filing his lawsuit in this Court. Griffin has not disputed this allegation. Dismissal of Griffin's claims is required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e, if he did not present his claims through the administrative remedy procedure available at WCDC. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

8

Here, the evidence presented is the undisputed affidavit that Griffin never filed any grievances through the established administrative remedy procedure at WCDC. (*See* ECF No. 16-12.) Additionally, Defendants have provided the Court with a detailed description of the procedure in place for detainees to file grievances at WCDC. (*See* ECF Nos. 16-13; 16-14.) Therefore, the Court concludes that Griffin has not administratively exhausted his claims.

A claim that has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). While a "prisoner need not exhaust remedies if they are not available" *Ross*, 578 U.S. at 636,[2] Griffin has made no suggestion that the WCDC grievance procedure was not available to him.

Griffin's failure to exhaust administrative remedies requires dismissal without prejudice of his complaint. While Defendants have moved for summary judgment, and the Court has considered evidence attached to the motion in reaching the conclusion herein, the Fourth Circuit has advised that dismissal for failure to exhaust should be without prejudice. *Moss v. Harwood*, 19 F.4th 614, 623 n.3 (4th Cir. 2021) (collecting cases). Judgment will therefore be entered in favor of WCDC, Bottman, and Grove, and Griffin's claims against them will be dismissed without prejudice.[3]

---

[2] The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

[3] The Court notes that WCDC, Bottman, and Grove were never formally served with process in this case. However, through the filing of the instant Motion, they have "consented to the Court's jurisdiction." *Shing v. Ctr. for Medicare Servs.*, No. CV 23-3415-BAH, 2024 WL 1833600, at *3 n.6 (D. Md. Apr. 26, 2024). Because these Defendants have not "specifically move[d] to object to the validity of service of process under Rule 12(b)(5)," they have "waive[d] any objection to service of process." *Id.* (internal quotation marks and citation omitted).

### C.    PrimeCare Medical and PrimeCare Medical Staff

Griffin has also named as Defendants PrimeCare Medical and "PrimeCare Medical Staff."

However, service of the Amended Complaint has not been effected on either Defendant.

Nevertheless, pursuant to 28 U.S.C. § 1915A, the Court may dismiss Griffin's claims "as soon as

practicable after docketing" if his complaint fails to state a claim upon which relief can be granted.

### 1.    PrimeCare Medical

PrimeCare Medical is a corporate entity that is only liable for the unconstitutional actions

of individual employees where those employees were executing an official policy or custom of the

local government or private corporation that violated the plaintiff's rights. *Monell v. Dep't of Soc.*

*Servs. of City of New York*, 436 U.S. 658, 690–91 (1978); *West v. Atkins*, 487 U.S. 42, 49 (1988)

(holding that when a state delegates its obligation to provide inmates with medical care to a private

actor, the private actor acts under color of state law when providing that medical care). In order

to establish a *Monell* claim, a plaintiff must demonstrate that: (1) the municipality or private entity

had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a

violation of the plaintiff's constitutional rights. *See, e.g., Bd. of Cnty. Comm'rs of Bryan Cnty.,*

*Okl. v. Brown*, 520 U.S. 397, 403 (1997). Here, Griffin does not allege that PrimeCare had or has

a policy or custom in place which was carried out by the medical care providers and resulted in

the violation of his constitutional rights. His claim against PrimeCare Medical must therefore be

dismissed for failure to state a claim.

### 2.    PrimeCare Medical Staff

The Court construes Griffin's claim against "PrimeCare Medical Staff" to be for deliberate

indifference to a medical need in violation of his Fourteenth Amendment rights. To state a

deliberate indifference to medical needs claim, "a pretrial detainee must plead that (1) they had a

medical condition or injury that posed a substantial risk of serious harm; (2) the defendant

intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). Further, as the Fourth Circuit recently held, a deliberate indifference claim cannot be sustained unless it makes "defendant-specific allegations." *Rice v. Adams*, No. 24-2026, 2026 WL 996964, at *3 (4th Cir. Apr. 14, 2026). These allegations must be "particular enough to allow one to infer what each defendant did and knew. Lumping defendants together won't do." *Id.* (citation omitted).

Griffin's claim fails this final requirement. When describing the facts underlying his claim, he only makes vague and collective allegations against "PrimeCare Medical Personell [sic]" "without specifying how each individual defendant interacted with [him] or bore responsibility for the alleged constitutional deprivation." *Rice*, 2026 WL 996964, at *3. As to his claim that he is being denied his medication, while Griffin makes a passing mention of a "Nurse lisa," he ultimately alleges only that he is putting "Office Groaves [sic] in charge of this claim as well as Primecare." (ECF No. 10 at 5.) That is insufficient to state a claim against individual PrimeCare staffers.[4]

## IV.   CONCLUSION

For the foregoing reasons, the County Defendants' Motion will be granted; Griffin's request for appointment of counsel will be denied; and the claims as to PrimeCare Medical and PrimeCare Medical Staff will be dismissed. The Clerk will be directed to close this case. A separate Order follows.

---

[4] Although the County Defendants attached Griffin's medical records to their Motion, and the records seem to contradict Griffin's allegations, the Court has not considered these records in its analysis of whether Griffin has stated a claim against PrimeCare Medical Staff. Because the Court decides these claims pursuant to 28 U.S.C. § 1915A, the Court accepts Griffin's allegations as true. *Shaw v. Foreman*, 59 F.4th 121, 126–27 (4th Cir. 2023).

11

Dated this __21__ day of April, 2026.

FOR THE COURT:

James K. Bredar
United States District Judge